Philip D. Robben
Aaron J. Gold
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Tel: (973) 503-5900
Fax: (973) 503-5950
probben@kellydrye.com
agold@kelleydrye.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| L&T Technology Services Limited,<br><br>Plaintiff,<br><br>v.<br><br>Cribb Philbeck Weaver Group, Inc.,<br><br>Defendant. | Case No. 2:25-cv-1588<br><br>**CIVIL ACTION**<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff L&T Technology Services Limited ("LTTS") by and through its undersigned counsel, brings this complaint against defendant Cribb Philbeck Weaver Group, Inc. ("CPWG") and alleges as follows:

### INTRODUCTION

1.      This action arises from CPWG's failures. First to preform competently on a job and second to honor a straightforward contract.

2.      LTTS (unwisely as it turns out) engaged CPWG as the general contractor on a construction project. CPWG's performance was very poor. In addition to that, CPWG did not pay the subcontractors it hired for their work on the

project. CPWG's failure to pay its subcontractors was even more egregious because LTTS advanced CPWG the money it needed to pay the subcontractors. Consequently, the subcontractors halted work and construction on the project stopped dead in its tracks. And one of the subcontractors put a mechanic's lien on LTTS' customer as well as on CPWG. This caused serious escalation from LTTS' client, damaging LTTS' reputation and business with the customer.

3.     Ultimately, LTTS removed CPWG from the project and took over as the project's general contractor.

4.     LTTS and CPWG negotiated terms of the handover, memorialized in a Memorandum of Understanding (the "MOU"). Among its various terms, the MOU provided that LTTS would pay outstanding amounts owed to the project's subcontractors, and CPWG would reimburse LTTS for making those payments that CPWG should have made.

5.     CPWG has not reimbursed LTTS as promised. Worse yet, CPWG left LTTS with even more costs than LTTS anticipated, which arose from CPWG's failure to pay even more vendors than previously known. CPWG had a duty to disclose those additional costs but kept silent, apparently to reduce its debt to LTTS. LTTS has also been forced to bear additional costs, such as cleanup expenses, stemming from CPWG's mismanagement of the project site during the time CPWG was the project's general contractor.

6.  Altogether, CPWG owes LTTS nearly $1 million. Prior to initiating this action, LTTS made several attempts to resolve the matter amicably. CPWG did not respond favorably to LTTS' attempts at resolution. Now, therefore, LTTS seeks the Court's redress.

## PARTIES

7.  LTTS is a corporation organized under the laws of the Republic of India, with its principal place of business located in Vadodara, Gujarat, India. It maintains a branch office in this state at 2035 Lincoln Highway, Suite 3002, Edison Square West, Edison, New Jersey 08817.

8.  CPWG is a corporation organized under the laws of the State of Florida, with its principal place of business located at 3918 North Highland Avenue, Tampa, Florida 33603.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because LTTS is a citizen of the Republic of India, CPWG is a citizen of the State of Florida, and the amount in controversy exceeds $75,000, exclusive of fees and costs.

10.  Venue is proper in this District, because the parties have agreed through the forum selection clause located in Section 6 of the MOU to resolve in this District any disputes between them "arising from or relating to" the MOU.

11.     This Court has personal jurisdiction over all parties because the parties have consented to this Court's jurisdiction through the forum selection clause located in Section 6 of the MOU.

## FACTUAL BACKGROUND

### LTTS Engages CPWG to Construct the Texas Project

12.     LTTS is a global company, based in India, that offers its clients a vast array of technology, engineering, and consulting services worldwide. One of LTTS' specialties is the designing and facilitating construction of sustainable wastewater treatment plants.

13.     In 2021, one of LTTS' regular clients engaged LTTS to design and build a wastewater treatment facility in San Antonio, Texas (the "Texas Project").

14.     LTTS engaged CPWG to act as the general contractor at the Texas Project. CPWG was to engage subcontractors to build the facility per LTTS' design, manage the subcontractors' work, and ensure timely completion. CPWG was also responsible for obtaining certain permits necessary to allow construction on the site chosen for the Texas Project.

15.     To facilitate construction, LTTS advanced CPWG $675,465 that CPWG would use for related expenses. Contemplated costs included, among other things, obtaining necessary materials for the Texas Project and paying subcontractors for their construction work.

**CPWG's Multiple Failures Lead to Its Dismissal From the Texas Project**

16.     CPWG did not competently fulfill its role as the general contractor on the Texas Project. Its shortcomings included its failure to ensure that (1) the Texas Project timely secured necessary permits, (2) construction progress met specified milestones, and (3) subcontractors were paid for their work.

17.     CPWG not only failed to pay subcontractors for all their work, but also opted to keep for itself much of the money that LTTS had advanced to pay subcontractors.

18.     CPWG's ongoing non-payment of subcontractors eventually halted construction on the Texas Project, as subcontractors would not continue working until they were paid for their services. This caused significant delays and put the entire project in jeopardy.

19.     One of the subcontractors that CPWG failed to fully pay was Mueller & Wilson, Inc. ("M&W") who was responsible for the plant's mechanical equipment, electrical wiring, and plumbing.

20.     Given CPWG's ongoing failure to pay, M&W filed a mechanic's lien against both CPWG and LTTS' client, the project owner, in Texas state court on May 2, 2023 to secure compensation for its labor.

21.     LTTS' client found the delays and the mechanic's lien unacceptable, regarded the situation a debacle, and since, LTTS had been the one to engage CPWG

as general contractor, considered LTTS ultimately responsible for the problems at the project, straining their mutual relationship.

22.    The client further decided it would no longer tolerate CPWG's failures and in May 2023, insisted that LTTS remove CPWG from Texas Project and that LTTS take over as general contractor to finish construction of the plant.

**The Parties Negotiate the MOU to Facilitate CPWG's Exit from the Texas Project**

23.    Over the next few weeks, LTTS and CPWG discussed the process and conditions for LTTS to replace CPWG, get the subcontractors paid, and remove impediments to the Texas Project's completion. After detailed negotiations, LTTS and CPWG memorialized the agreement reached during these negotiations by executing the MOU. (*See* Ex. 1.) CPWG agreed to the MOU's terms on June 1, 2023, and sent LTTS the executed copy of the MOU later that day. (*See* Ex. 2.)

24.    The purpose of Sections 4.6 and 4.7 of the MOU was to specify what subcontractors had yet to be paid for their work, ensure those subcontractors received their compensation from LTTS, and for CPWG to reimburse LTTS for work already done or would be necessary to remediate CPWG's failures in connection with the Texas Project.

25.    Under the MOU, among other things, LTTS agreed to promptly pay the subcontractors—that CPWG failed to pay—so that construction on the Texas Project could immediately resume. That amount totaled $696,267.58 (*see* Ex. 1 § 4.6.) In

essence, LTTS was double paying (by twice advancing money) for this work since it had already advanced funds to CPWG to pay subcontractors.

26.    CPWG, in turn, agreed to reimburse LTTS $696,267.58, because LTTS should never have needed to pay that money, and would have had no need if CPWG had fulfilled its obligations at the Texas Project. (*See id.* § 4.7.)

27.    CPWG also "confirm[ed] that to the best of its knowledge no payments are due to any other subcontractors and/or vendors . . . and would not put on LTTS or its clients any additional liability. . . ." (*See id.* § 4.6.)

**CPWG Refused to Pay the Money Owed Under the MOU and Forced LTTS to Incur Additional Costs**

28.    LTTS paid $696,267.58 to subcontractors identified in the MOU and took over as general contractor at the Texas Project.

29.    CPWG has failed to pay LTTS any portion of the outstanding $696,267.58.

30.    CPWG's breach of the MOU has also caused LTTS incur additional costs totaling at least $217,110.44. To date, these costs are:

(i)    $115,609.07 paid to M&W to discharge the mechanic's lien that M&W recorded after CPWG failed to pay M&W for its work.

(ii)    $96,183.00 paid to a subcontractor for work relating to fiber glass construction at the Texas Project.

(iii)    $5,318.37 paid to vendors for site cleaning and removal of junk left over from CPWG's presence at the Texas Project site.

31.    CPWG knew that (a) payments to these subcontractors/vendors were outstanding when CPWG executed the MOU, (b) invoices for work already performed by these subcontractors/vendors at CPWG's direction were imminent and violated its duty to disclose that information to LTTS, and/or (c) knew such work by these subcontractors/vendors would be necessary to remediate CPWG's failure to competently fulfill its role as general contractor at the Texas Project and violated its duty to disclose that information to LTTS.

32.    CPWG thus owes LTTS $913,378.02.

33.    Although LTTS had no obligation to do so, since June 2023, LTTS has made numerous requests to CPWG that it honor the MOU and pay the entire outstanding $913,378.02 it owes to LTTS. (*See*, *e.g.*, Exs. 3–4.) All these requests have gone unheeded.

## COUNT ONE
### (Breach of Contract)

34.    LTTS expressly incorporates its preceding allegations as if fully set forth herein.

35.    The MOU is supported by adequate consideration.

36.    The MOU is valid, binding, and enforceable against CPWG in accordance with its terms.

37.    LTTS has fully performed as required under the MOU.

38.    CPWG has breached the MOU by engaging in the conduct described herein, including by its failure to pay LTTS: (1) $696,267.58 as required by Section 4.7 of the MOU, and (2) $217,110.44 to compensate LTTS for costs incurred through CPWG's breach.

39.    CPWG's breaches have thus resulted in damages to LTTS totaling at least $913,378.02.

## COUNT TWO
### (Breach of the Duty of Good Faith & Fair Dealing)

40.    LTTS expressly incorporates its preceding allegations as if fully set forth herein.

41.    The MOU is supported by adequate consideration.

42.    The MOU is valid, binding, and enforceable against CPWG in accordance with its terms.

43.    LTTS has fully performed as required under the MOU.

44.    The parties negotiated the MOU, in part, to (a) ensure that subcontractors/vendors on the Texas Project were paid for their work and (b) ensure that CPWG reimbursed LTTS for payments for those subcontracts, since CPWG would have paid them with money LTTS had already advanced CPWG for such costs.

45.    CPWG concealed/withheld information about payments for work already done or would be necessary to remediate CPWG's failures at the project—

in violation of its duty to disclose such information—to reduce its monetary obligations to LTTS.

46.    Because of CPWG's breach of its duty, these additional payments were not listed in the MOU.

47.    CPWG's actions have damaged LTTS in the amount of at least $217,110.44.

## PRAYER FOR RELIEF

**WHEREFORE** LTTS demands judgment in LTTS' favor on all counts against CPWG as follows:

(a)    For an award of damages in the amount of $913,378.02;

(b)    For LTTS' actual costs, expenses, and reasonable attorneys' fees, including all related costs and expenses incurred by LTTS to bring this action;

(c)    For pre- and post-judgment interest; and

(d)    For any further relief that this Court deems just and proper.

## JURY DEMAND

LTTS hereby demands a trial by jury on all causes of action so triable.

## LOCAL CIVIL RULE 11.2 CERTIFICATION

The undersigned hereby certifies that the matter in controversy is not the subject of any other action currently pending in any court, arbitration, or administrative proceeding.

Dated: March 3, 2025                         Respectfully Submitted

                                             */s/ Philip D. Robben*
                                             Philip D. Robben
                                             Aaron J. Gold
                                             KELLEY DRYE & WARREN LLP
                                             One Jefferson Road, 2nd Floor
                                             Parsippany, NJ 07054
                                             Tel: (973) 503-5900
                                             Fax: (973) 503-5950
                                             probben@kelleydrye.com
                                             agold@kelleydrye.com